UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 03 CR 90 |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| JULIAN SALAZAR | ) | |

## GOVERNMENT'S SENTENCING POSITION PAPER

The UNITED STATES OF AMERICA, by and through its attorney, PATRICK J.

FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits

this sentencing position paper with respect to defendant Julian Salazar. The government has

previously submitted a government's version, which exhaustively set forth the facts and

circumstances of the offense, as well as defendant's role in the offense. This position paper is

submitted to supplement the government's anticipated argument at the upcoming sentencing.

I.  Each of the Factors Required to be Considered by the Court under 18 U.S.C. § 3553(a) Requires a Life Sentence.

In imposing a sentence, the Court is required to consider the factors set forth in §

3553(a), including, among other things: (1) the nature and circumstances of the offense; (2) the

history and characteristics of the defendant; (3) the need for the sentence imposed (a) to reflect

the seriousness of the offense, to promote respect for the law, and to provide just punishment for

the offense, (b) to afford adequate deterrence to criminal conduct, and (c) to protect the public

from further crimes of the defendant; (4) the sentencing range set forth in the advisory

guidelines; and (5) the need to avoid unwarranted sentencing disparities among the defendants.

Each of these factors compels a life sentence for defendant Salazar.

1.  Nature and circumstances of the offense

The nature and circumstances of the instant offenses could not weigh more heavily in favor of a life sentence. As more fully set forth in the government's version of the offense and as proven at trial, the defendants, as members of the Insane Deuces street gang, committed 4 murders, 11 attempted murders, 2 conspiracies to commit murder, countless weapons offenses, and substantial drug trafficking in 2002 alone. The murder and mayhem, however, was not confined just to 2002. Over the life of the conspiracy, which spanned from late 1994 to 2006, the defendants were responsible for countless murders, attempted murders, weapons offenses, and drug trafficking throughout northern Illinois, including in Chicago, Aurora, and Elgin.

Indeed, the defendants were members of a gang which had as its guiding principle the murder and destruction of rival gang members. This guiding principle was perhaps best summarized by defendant Arturo Barbosa at the July 5, 2002 recorded gang meeting, when he stated: "no ifs, ands, or buts. You see a flizzy, you do his ass, plain and simple."

The goal of the Insane Deuces was nothing short of taking control of Aurora, Illinois. As defendant Salazar stated at the July 5, 2002 recorded gang meeting: "We could take this motha fucka town. I'm tellin' you, we got close to 40 motha fuckin' kids, man. They just don't know where to go."

If the gang's guiding principle of murder were not disturbing enough, the evidence further showed that, in attempting to take control of Aurora, the defendants were callously indifferent as to whether the individuals they killed and attempted to kill were actually rival gang members. To the Insane Deuces, if you were young and Hispanic, or young and black, and the Insane Deuces did not know you, that was reason enough to kill you, because you were a threat to their growth and plans for Aurora. As defendant Salazar explained at the July 5, 2002 gang

2

meeting: "For all these new niggas to grow up, that's, if one, if you King Killer, and you wanta be somethin', you gonna turn the motha fucka what? Duece. Why you gonna give 'em the option?" In explaining why a rival gang was a threat to the Insane Deuces, defendant Salazar further stated: "They're a threat because they're a threat to our growth, our growth, because all them neutron kids growin' up, they're givin' them another option to turn to somethin' else ... They should only have one choice ... Either if you gonna be that side ... you gonna be on this side, you ain't got but one choice. Turn Deuce. They stuntin' our growth." To the Insane Deuces, the children of Aurora had only 1 choice to make growing up: turn Deuce or die.

The gang's reaction to their murder of David Lazcano on August 11, 2002, underscores the cold indifference of the Insane Deuces to human life. As the Court will recall, David Lazcano was not a gang member. Instead, David Lazcano belonged to the "Royal Individuals," which was a club dedicated to restoring low-rider cars and bicycles. When the Royal Individuals finished restoring a car or bicycle, they would put a plaque on it with their motto – "Cruise Away from Crime." The Royal Individuals would then take the restored cars and bicycles to shows, where they would talk to young people about the dangers of drugs and gangs.

Upon learning that David Lazcano was not a gang member, defendant Juarez explained to defendant Delatorre that they sometimes would kill non-gang members, indifferently stating, "Sometimes shit happens like that." Defendant Delatorre perhaps summed up the indifference of the Insane Deuces best when he stated, "Fuck that stud. He's guilty by association."

Of course, David Lazcano was guilty of nothing, other than being a 17-year-old boy trying to live his life and stay out of trouble. Unfortunately, the Insane Deuces and these defendants had no respect or use for individuals such as David Lazcano. In the end, David

Lazcano was murdered because he was young and Hispanic and driving north on Union Street in Aurora, about to cross into "King hood." Because defendants Guzman and Delatorre did not recognize David Lazcano, they did what Deuces do, they assumed he was a rival gang member and murdered him in cold blood.

Although tragic standing alone the murder of David Lazcano is not the only example of a life ended much too early, or a life forever altered, by the defendants and their actions. Robert Perez was murdered inside his home, while playing video games with friends, the unintended victim of an attempt to kill a Latin King gang member. David Morales was gunned down by the Insane Deuces a little after 7 a.m. as he waited to for a ride to go look for a job. Erbell Valdez was just 15 years old when he was murdered while walking down the street on a Sunday afternoon. Fourteen-year-old Mario Gomez took the last steps he will ever take as he played with his brother and friends outside their family house; Mario was shot and is now paralyzed from the chest down because he was young, Hispanic, and not recognized by the Insane Deuces.

2.    History and characteristics of the defendant

It is difficult to imagine a more calculating, depraved individual than Julian Salazar. Like defendants Benabe and Juarez, defendant Salazar is a life-long Insane Deuces gang member, having worked himself up through the ranks from Shorty, to Junior, to the Governor of the Aurora faction of the Insane Deuces.[1] As the governor of the Aurora Insane Deuces, Salazar

---

[1] While working himself up through the ranks, Salazar was convicted of at least two gang-related felonies. First, on March 19, 1997, Salazar was arrested and charged with aggravated discharge of a firearm into an occupied vehicle and with being a felon in possession of a firearm. According to the police reports, Salazar was hanging out with 2 other Insane Deuces gang members when he fired 5 shots from a .357 revolver into a car containing 4 persons (unknown gang affiliation). Witnesses reported that Salazar was yelling at the car when he fired the shots. Second, on January 30, 2003, Salazar was arrested and charged by this office with

was responsible for issuing and enforcing the general standing orders to kill rival gang members. The June 7th and July 5th recorded gang meetings detailed throughout this case underscore Salazar's depravity.

Salazar's involvement in issuing orders to kill were not limited to those two meetings. On August 11, 2002, only hours after Insane Deuce gang member Rashard Wright was murdered by suspected Latin Kings, Salazar called a meeting at which he and MARTINEZ took an inventory of the gang's guns and ordered the Shorties to kill Latin Kings in retaliation. A few hours later, DELATORRE and GUZMAN killed David Lazcano, who they erroneously thought was a Latin King gang member, and other Insane Deuces shot a Latin King gang member numerous times.

Likewise, on October 11, 2002, only hours after Insane Deuce gang member Arthur Soto was killed by suspected Latin Kings, Salazar called a meeting at his house to plan retaliation for that murder. At that meeting, Salazar handed out guns and issued orders to kill Latin Kings in retaliation. A few days later, on October 16, 2002, Insane Deuces Shorties Delatorre, Horton, and Quigley shot and killed David Morales at approximately 7:20 a.m. as he stood outside his house waiting for his cousin to pick him up to go look for work.

Salazar was also captured on audio tape soliciting additional murders. First, on August 16, 2002, and again on August 22, 2002, Salazar asked the CW to kill Latin King gang member Steve Liscano. In both of those tapes, Salazar gave the CW explicit directions to Liscano's

---

being a felon in possession of a firearm and with distribution of one ounce of cocaine. In June 2003, Salazar pleaded guilty to being a felon in possession of a firearm, and, in February 2004, Salazar was sentenced to 10 years imprisonment after the government proved up that Salazar transferred that firearm with the intent that it would be used in the murder of John Landeros.

house and told the CW that he sent Shorties out the night before to do the job but they had failed to complete the job.

Second, beginning in September 2002, Salazar led a conspiracy to murder John Landeros, who Salazar and other gang members suspected of cooperating with the police. Unfortunately for Salazar, he solicited the CW to kill the suspected informant, and law enforcement officers were able to capture a number of discussions regarding this attempted murder on audio and video tape. Among other things, Salazar provided the CW with a gun to use in the murder, advised the CW that he had also given a gun to another gang member to commit the murder, and asked the CW to call him before he killed Landeros so that Salazar could first get some drugs from Landeros without paying for them.

The cavalier attitude with which Salazar discussed and ordered the killing of rival gang members cannot be understated. As Judge Zagel stated when he sentenced Salazar to 10 years imprisonment for being a felon in possession: "The thing I find most distressing about the facts of this case and the character of the defendant is not the facts of what he did, which are bad enough, but the disposition and character he showed in the tapes. Mr. Salazar belongs to, I think, a uniquely dangerous class of individuals, who, perhaps because of what they have seen in the movies or what they have read about, decide that their profession is to be the mastermind of a criminal enterprise – to give orders, to expect them to be obeyed, to determine life and death." A sentence of life imprisonment is the only appropriate sentence for defendant Salazar.

> 3.    The need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (b) to afford adequate deterrence to criminal conduct, and (c) to protect the public from further crimes of the defendant.

These factors also demand a life sentence. As detailed above and throughout the government's filings in this case, there are few, if any, more serious offenses than this one, which involved organized and systematic killings. In committing these crimes, the defendants have repeatedly demonstrated that they have no respect for the law or human life. Life imprisonment is necessary to provide just punishment.

With respect to deterrence, no sentence less than life imprisonment is going to deter future criminal conduct by this defendant. Defendant Salazar is a leader of a gang that has as its guiding principle murder. A term of years is not going to deter this defendant or any member of the Insane Deuces. Indeed, serving time in prison is a badge of honor in the Insane Deuces, earning a member respect for the "time" he does on behalf of the organization. As the evidence in this case further proved, when a member is released from prison, he expects to receive the respect he has perversely earned within this organization.

A life sentence will also act as general deterrence, sending a message to the young people throughout this judicial district that, if you join a gang, where murder, gun trafficking, and drug dealing are part of the agreement, you forfeit your right to live in a free society as soon as you are caught. You forfeit that right not for a few years, but for the rest of your life.

Most importantly, a life sentence is necessary to protect the public from further crimes of the defendant. Simply put, every day that defendant Salazar spends in jail, the world will be a safer place. More specifically, every day this defendant spends in jail, the children of Aurora will be safer on their streets, on their bikes, playing outside, and in their schools.

4.     The Sentencing Guidelines

The Sentencing Guidelines also weigh heavily in favor of a life sentence. As detailed in the various presentence reports, the Guideline range for each defendant is life imprisonment. A brief look at the underlying base offense levels further confirms that life imprisonment is appropriate. As detailed in the PSR, the adjusted base offense level for defendant Salazar was 54, which is a staggering 11 levels beyond the end of the sentencing guideline grid.

      5.     <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u>

This factor also requires a life sentence be imposed against defendant Salazar. As the various PSRs conclude, each of the defendants in this case has a guideline range of life imprisonment. Given the facts of this case, a life sentence is appropriate for all of the defendants based on their extended involvement in an organization responsible for multiple murders, attempted murders, conspiracies to commit murder, firearms trafficking, and drug trafficking.

A life sentence against defendant Salazar is also appropriate when you consider the sentences facing two of the Shorty gang members in this case – defendant Delatorre and defendant Guzman. Both Delatorre and Guzman are facing statutory mandatory life sentences based on their convictions for murder under 18 U.S.C. § 1959. Defendant Delatorre was convicted of 3 murders; defendant Guzman was convicted of 1 murder.

Defendant Salazar was found responsible for each of those murders by the jury in the second phase of the trial with respect to the RICO conspiracy charge. While a conviction for RICO conspiracy does not carry a mandatory life sentence, there is no justifiable reason not to impose the same sentence on defendant Salazar that defendants Delatorre and Guzman are required to receive. In fact, it would be manifestly unjust to impose a lesser sentence on defendant Salazar, who, as a gang leader, was responsible for creating, maintaining and

enforcing the gang's rules and regulations, recruiting the children of Aurora into the Insane

Deuces, teaching them how to kill, providing them weapons to kill, and then sending them out

with a general order to kill any rival gang member on sight.  To be sure, defendants Delatorre

and Guzman embraced those orders and were two of the most ruthless killers within the Insane

Deuces.  However, defendant Salazar and the other gang leaders are equally, if not more, legally

and morally responsible for those murders.  He should be sentenced accordingly.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney


    /s/ Patrick C. Pope
Patrick C. Pope
Christopher P. Hotaling
Meghan C. Morrissey
Assistant United States Attorneys
312-353-1980

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following documents:

## GOVERNMENT'S SENTENCING POSITION PAPER

was served on December 15, 2008, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

      /s/ Patrick Pope
Patrick Pope
Assistant United States Attorney
(312) 353-1980

10