UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 03 CR 90 |
| | ) | Honorable Ruben Castillo |
| STEPHEN SUSINKA | ) | |
| | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES the Defendant, STEPHEN SUSINKA, by and through his attorneys, Jack P. Rimland and Steven M. Wagner, and hereby submits Defendant's Sentencing Memorandum to the Court. For the reasons stated below the statutory maximum of twenty (20) years imprisonment is greater than necessary to satisfy the Federal Sentencing goals of 18 U.S.C. Sec. 3553 (a)(2).

**Introduction**

This case is before the Court for sentencing after a verdict of guilty on April 21, 2008. The defendant was found guilty on Count 1 of the Superceding Indictment, for the offense of Racketeering Conspiracy under 18 U.S.C. Sec. 1962 (d) as reflected in both the Pre-sentence Investigative Report, prepared by the United States Probation Office and the Government's Sentencing Position Paper submitted by the United States Attorney. The statutory maximum sentence is twenty (20) years imprisonment. The U.S.S.G. for violation of 18 U.S.C. Sec. 1962 (d) is found in Sec. 2E1.1 and calls for a base offense level of 19. Assuming arguendo, the defendant has a criminal history category IV, (the defendant Stephen Susinka has filed on his own behalf a number of sentencing submissions which address these very issues) the advisory guideline range would be 46-57 months imprisonment.

Accordingly, defendant Stephen Susinka prays this Honorable Court will impose a sentence below the statutory maximum of twenty (20) years imprisonment. A sentence below the statutory maximum will punish Stephen Susinka for his illegal conduct and does not deprecate the seriousness of the offense.

One of the main factors this Honorable Court should consider in sentencing pursuant to 18 U.S.C. Sec. 3553 (a) is the following:

**History and Characteristics of the Defendant**

Stephen Susinka's parents, Teresa and Stephen Susinka, Sr., although perhaps well intentioned, lacked the resources necessary to raise successful children in an environment of crime and violence.

Stephen's father, Stephen Sr., is a long-term, chronic alcoholic. This is confirmed by both Stephen's school records[1] and treatment records for Bridget Susinka, Stephen's sister.[2]

The Susinka parents did not have the time, nor ability, to help their children successfully overcome the challenges they faced. Neither of Stephen's parents have a high-school diploma and both worked long hours trying to make ends meet. They were rarely home with the children and when they were, Stephen senior's alcoholism prevented him from parenting his children. Bridget's

---

[1] Attachment A, Social Development Study, dated 10/27/97 at Mit-135.

[2] Attachment B, Placement Goal Plan & Progress Report concerning Bridget Susinka, dated 2/27/96 at BS-66.

psychiatric treatment records related that "Both parents work full-time on opposite shifts and have difficulty providing supervision for both children."[3]

---

[3] Attachment B, Placement Goal Plan & Progress Report concerning Bridget Susinka at BS-66.

Stephen's mother Teresa suffers from depression. Her therapist, Donna Boebel, reports that Teresa has been depressed for many years, but refuses to take anti-depressants or anti-anxiety medication. Teresa's depression is also noted in Stephen's school records.[4] Of course, Teresa's depression affected her children: as the Surgeon General explains, "children of depressed parents are more than three times as likely as children with nondepressed parents to experience a depressive disorder. They also are more vulnerable to other mental and somatic disorders."[5]

Limited by job and money demands, emotional instability, and chemical dependency, Stephen's parents were ill equipped to set the boundaries and provide the protection necessary for young children, especially children growing up in an environment as lawless as the Susinka's. According to Bridget's treatment records, by the time she was 14, Bridget "was out of parental control in that she would come and go as she pleased."[6]

In spite of adverse circumstances, Stephen was a successful child. He did well academically

---

[4] Attachment D, Aurora East Public School Medical History at Mit-147.

[5] *Mental Health: A Report of the Surgeon General*, http://www.surgeongeneral.gov/library/mentalhealth/chapter3/sec5.html (citations omitted).

[6] Attachment B, Placement Goal Plan & Progress Report concerning Bridget Susinka at BS-64.

receiving mostly As and Bs through third grade.[7] His kindergarten teacher commented: "Steve is a gifted learner. This has been quite a year for Steve. He sure has made fantastic growth."[8] When he was eight years old, Stephen scored between the 89th and 99th percentile in all subjects on Iowa Tests of Basic Skills.[9] He enjoyed sports, including t-ball and karate.[10] But the influence of his 'gang-banging' sister and the crime that surrounded Stephen was difficult to resist.

Bridget and Stephen were only two years apart in age and when he was young, Stephen looked up to his sister: Bridget states that he followed her around and always wanted to hang out with her. With his mother at work and his father drunk, Bridget was Stephen's most prominent role model.

Stephen was frequently exposed to the criminal activities of the older sister he looked up to. Bridget states that Stephen knew she was selling drugs and that she kept drugs and guns in the house. Stephen continued to follow Bridget around even when she was hanging out on the corner with other gang members. Bridget would ask her mother to keep Stephen home, but her mother told her to let Stephen come along.

---

[7] Attachment E, Elementary-School Records for Stephen Susinka.

[8] *Id.*

[9] *Id.* at Mit-16.

[10] Attachment F, childhood photos of Stephen Susinka.

The Insane Deuces were a large presence in young Stephen's childhood and gang members his most common role models. Bridget told the grand jury, "A lot of ID Junior and Shorty members began hanging out at my parents house" in 1991 and 1992,[11] when Stephen was eight and nine. When Bridget was 13 and Stephen was around 11, Bridget's boyfriend, an Insane Deuce, moved into the Susinka house. He lived there for a year.

Aurora Police Sergeant Kearbey, a former gang officer, explained that the Susinka's corner was the heart of Insane Deuces territory, and there would often be dozens of gang members loitering on the corner or in front of the house. Bridget told the grand jury that the corner of Ohio Street and Second Avenue, where her parent's house is located, was one of three spots within Insane Deuces territory where each gang member was required to spend at least 30 minutes a day.[12] Sergeant Kearbey also confirmed that the Susinka's across-the-street neighbor was a gang leader.

---

[11] Grand Jury Testimony of Bridget Susinka.

[12] Grand Jury Testimony of Bridget Susinka.

The effect of Bridget's behavior on her younger brother was profound. As Stephen's school counselor noted, "When Bridget starting having problems, Steve was in 4th grade. Problems with him began then."[13]

Stephen's grades began to drop and he began to act out in school. He was diagnosed with attention-deficit disorder and prescribed Ritalin.[14]

As a child, Stephen learned that violence and crime where expected and accepted parts of everyday life. In 1994, Bridget reported that at least 25 of her friends had been shot that year.[15] The Insane-Deuce kingpin across the street was the target of several drive-by shootings. On November 20, 1996, Stephen personally witnessed one of these shootings, and discussed his observations with responding police officers. He was not quite 13 at the time.

Violence touched members of the Susinka family. Bridget told the grand jury about four occasions when she fired shots at other people and describes two shootings that took place at or near her family's home, one in which Bridget and her boyfriend were shot at while taking Bridget's three small children out of the car.[16]

And violence was within the family. In addition to Stephen senior's abuse, Bridget used to get

---

[13] Attachment A, Social Development Study at Mit-137.

[14] Attachment D, Medical History at Mit-147.

[15] Attachment H, Linden Oaks Hospital Integrated Progress Notes concerning Bridget Susinka, dated October 19, 1994 at BS-380

[16] Grand Jury Testimony of Bridget Susinka.

in violent arguments with Stephen. Therapist Donna Boebel reports that Bridget attacked Stephen at least once with a knife.

The gang activity and violence in the Susinka's neighborhood was so omnipresent, and Bridget's involvement in gang life was so deep, that Aurora police advised Mrs. Susinka to move her family to a different area. Although they owned their house and could have sold it to finance a move, the Susinka family elected instead to continue to raise their children in an epicenter of gang activity and violence.

The violence around Stephen seemed inescapable. When he was young, he stayed inside during his free time, because he was afraid of the violence on the street. By the time he was in fifth grade, gang members began asking Steve to join. Steve would cut through the neighbor's' yards and sneak through a hole in the fence to avoid the gang members on his way home from school.

Stephen's fears were well founded: he too became the victim of extreme violence. On December 27, 2000, when he was 17, he was a victim in a drive-by shooting at the convenience store just a few blocks from his house. He was severely injured: the bone of his right arm was "shattered" and he had pins in his arms for months afterward.[17] Stephen believed had he not been raising his hand, he would have been shot in the heart and killed.

Stephen's mother and his therapist, Donna Boebel, state that Stephen changed dramatically after he was shot. He became withdrawn, depressed, and extremely fearful. He would call his mother when he was on his way home and ask her to watch for him: he wanted her make sure he made it safely from the car in the driveway into the house. Ms. Boebel says that Stephen showed signs of post-traumatic-stress disorder. Stephen was desperate for protection and for safety.

At age 17, Stephen Susinka's life embodied the nightmares of his childhood. In fifth grade, at

---

[17] Attachment I, Copley Memorial Hospital Records.

Beaupre Elementary School, Stephen wrote this poem, expressing his fear and resignation in the face of the brutality of his surroundings:

"My Neighborhood"

We've got to stop the violence,
Cause 5-0 can't do it.
The way my hood is,
I doubt if I'll live through it.
Stop it before we have to pay,
For all the other people's gangster ways.

For God created you and me,
To live in peace and harmony.
Everyone knows that God is willing
To help us stop all the killing.

If someone can think of just one more way,
It might stop all the wars and all the HATE.
The way it is in my neighborhood,
Everyone knows that it's not good.
If we don't live the way God made us for,
By tomorrow we'll all be knocking on heaven's door.

If this lasts just one more day,
I know that we'll be lying in a grave.
So stop the violence before we're all gone.
The way it is we won't live long.

WHEREFORE, for the various reasons put forth, the defendant, Stephen Susinka prays this Honorable Court will sentence him to a term of imprisonment which is below the statutory maximum of 20 years.

        Respectfully submitted,

        <u>s/Jack P. Rimland</u>
        Jack P. Rimland
        Steven M. Wagner
        Attorneys for Defendant

820 W. Jackson Boulevard, Suite 300

Chicago, IL 60607
(312) 831-1500
(312) 879-1785