**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 03-cr-90-16 |
| | ) | |
| STEVEN SUSINKA. | ) | Hon. Steven C. Seeger |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Steven Susinka was sentenced to 240 months in prison on January 20, 2009. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He points to the supposed non-violent nature of his offense, subsequent changes to the Sentencing Guidelines, his age at the time of the offense, and the COVID-19 pandemic.

For the following reasons, the motion is denied.

## Background

In May 2006, Defendant Steven Susinka was charged with multiple counts, including racketeering conspiracy (Count One) and conspiracy to distribute controlled substances (Count Nine) as a member of the Insane Deuces gang. *See* Second Superseding Indictment (Dckt. No. 227).

As described by the Seventh Circuit on appeal, Susinka was a "Shorty" within the Insane Deuces gang that plagued Aurora, Illinois. *See United States v. Benabe*, 436 F. App'x 639, 645 (7th Cir. 2011). In this role, he was responsible for carrying guns, going on missions, and carrying out orders for more senior members of the gang. *Id.*

At trial, the jury heard evidence that on February 12, 2002, Susinka drove fellow gang members and Defendants to murder Robert Perez. *Id.* Then, on February 23, he picked up other gang members to kill suspected members of a rival gang. *Id.* He was arrested on March 13,

2002, with a gun that had been used three days earlier in an attempted murder connected to the Insane Deuces. *Id.* He was arrested again in April 2002 for possession of a firearm after a struggle with a police officer. *Id.*

Susinka proceeded to a jury trial, which lasted several months. *See* 10/8/08 Order (Dckt. No. 1067). In April 2008, the jury convicted Susinka on Count One, and the Court declared a mistrial on Count Nine. *See* 3/21/08 Order (Dckt. No. 943); *see also* Jury Verdict Form (Dckt. No. 928). He faced a Guidelines sentence of life in prison, with a statutory maximum of 20 years. *See* PSR, at 28 (Dckt. No. 1317).

At sentencing, Judge Castillo imposed the statutory-maximum sentence of 20 years on Count One, to run concurrently with the state sentence that Susinka was already serving. *See* Judgment, at 1 (Dckt. No. 1278). Judge Castillo also imposed a five-year term of supervised release. *Id.*

Susinka challenged that sentence on appeal. *See Benabe*, 436 F. App'x at 660. The Seventh Circuit modified his supervised release term to three years to conform with the statutory maximum, but affirmed his sentence in all other respects. *Id.* at 660–62.

Susinka now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Def.'s Mtns. for Compassionate Release (Dckt. Nos. 2016, 2025, 2040).[1] He also filed a supplement to the motions. *See* Def.'s Supplement (Dckt. No. 2029). Specifically, Susinka argues that the non-violent nature of his offense, his youth at the time of the crime, and the fact that he would receive a lower sentence under current law each present an "extraordinary and

---

[1] Susinka has filed three motions for compassionate release. (Dckt. Nos. 2016, 2025, 2040) Two are handwritten, and identical. (Dckt. Nos. 2016, 2025) The third and most recent is typed, and, as far as this Court can tell, a word-for-word copy of his handwritten motions. (Dckt. No. 2040) For the purposes of this ruling, the Court refers to that most recent filing, meaning docket no. 2040.

compelling" reason for relief. *See* Def.'s Mtn. (Dckt. No. 2040). The government filed no response to the motion for compassionate release.

## Analysis

Congress established a "default rule that the district court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Sanford*, 986 F.3d 779, 781 (7th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). But the First Step Act carved out a few "limited exceptions." *Id.* Perhaps the most prominent exception is the compassionate release provision, which empowers – but does not require – district courts to shorten a sentence based on "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Under the statute, a district court may grant a motion to reduce a term of imprisonment after the defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See* 18 U.S.C. § 3582(c)(1)(A).

After exhaustion, a motion for compassionate release involves two steps. *See United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022). First, the defendant must present an "extraordinary and compelling" reason warranting a sentence reduction. *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i). Second, the Court must weigh any applicable sentencing factors from 18 U.S.C. § 3553(a) to determine whether a reduction is appropriate. *See Peoples*, 41 F.4th at 840.

**I.    Exhaustion**

In his motion for compassionate release, Susinka explains that he "submitted his original request for compassionate release to the Warden at United States Penitentiary Pollock on January

20, 2021," but that his request was not docketed as "received" until February 22, 2021, at which point it was rejected for failing to follow proper channels. *See* Def.'s Mtn., at 1 (Dckt. No. 2040). After a series of attempts to resolve the request informally, Susinka submitted an electronic request to the warden on August 23, 2021. *Id.* The warden answered and denied that request on September 8, 2021. *Id.*

Susinka's submission appears to be enough to satisfy the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A). In any event, there is nothing on the other side of the ledger. The government filed no response to Susinka's motion, so any argument that he failed to exhaust administrative remedies is waived. *See United States v. Sullivan*, 2021 WL 698497, at *5 (N.D. Ill. 2021). As a result, the Court proceeds to the merits of the motion.

## II. Motion for Compassionate Release

### A. Extraordinary and Compelling Reason for Sentence Reduction

Susinka offers several reasons for a sentence reduction. None are extraordinary or compelling.

Susinka begins by arguing that he is eligible for relief given the non-violent nature of his conviction. *See* Def.'s Mtn., at 2 (Dckt. No. 2040). Susinka was convicted on Count One of the second superseding indictment for racketeering conspiracy under 18 U.S.C. § 1962(d). He argues that because "[t]he RICO conspiracy conviction here contains no elements requiring the 'use, attempted use, or threatened use of physical force' . . . the instant conviction does not qualify as a 'crime of violence.'" *Id.* (quoting 18 U.S.C. § 16 (defining crimes of violence)).

That argument doesn't get Susinka very far. Susinka tells only half the story in portraying his offense as non-violent. The other half reveals a willing association with a violent gang responsible for a slew of murders.

4

At trial, the jury heard evidence about each of the Defendants' positions and responsibilities within the Insane Deuces gang. *See Benabe*, 436 F. App'x at 644. Susinka was a low-ranking member responsible for carrying guns and going on other missions for the gang. *Id.* at 645. He allegedly drove fellow gang members to murder Robert Perez. *Id.* And he again acted as driver weeks later when he picked up gang members who had tried to kill suspected members of the Latin Kings. *Id.* Susinka also was arrested with a gun that had been used just three days earlier in another gang-related attempted murder. *Id.*

The jury convicted Susinka on the RICO conspiracy, but it found that the murder of Robert Perez was not proven as to him. *Id.* at 660. At sentencing, however, Judge Castillo had "no doubt" that Susinka was the driver in the fatal shooting of Perez. *Id.* So, Judge Castillo considered that murder, along with Susinka's involvement with the Insane Deuces and his willingness to participate in acts of violence on their behalf, in deciding Susinka's sentence. *Id.* at 660. The Seventh Circuit held that the court did not err in doing so. *Id.*

In other words, Susinka's conduct was not non-violent. Judge Castillo found his actions intertwined with the violent gang activity – a gang that he voluntarily supported. This Court agrees. Even assuming that Susinka's crime of conviction was non-violent, that fact is offset by the violent nature of the gang activity that he participated in. *See United States v. Clinton*, 840 F. App'x 21, 21–22 (7th Cir. 2021) (finding that the district court did not abuse its discretion in denying compassionate release despite the non-violent nature of the crime); *United States v. Babbitt*, 850 F. App'x 977, 979 (7th Cir. 2021) (same where the district court found that defendant had numerous other instances of violence in his criminal history).

Even putting the murders aside, the RICO conspiracy involved the purchase and distribution of a large quantity of narcotics. *See* PSR, at 16 (Dckt. No. 1317). That alone

5

convinces this Court that the non-violent nature of the offense does not amount to an extraordinary or compelling reason for compassionate release. *See United States v. Howard*, 2021 WL 4318066, at *2 (N.D. Ill. 2021) (denying compassionate release to a defendant convicted of possession with intent to distribute because it is a "very serious" crime that involved "significant quantities of cocaine."); *United States v. Romero*, 2021 WL 5833978, at *2 (N.D. Ill. 2021) (finding that while defendant "may not have physically harmed anyone . . . his characterization of his offense as 'non-violent' [was] somewhat disingenuous" where the crime "was serious and involved the attempted distribution of a large quantity of narcotics").

Next, Susinka asks this Court to modify his sentence in light of changes to the state sentence he was serving at the time of his original sentencing. He further argues that, because of a subsequent amendment to U.S.S.G. § 5G1.3(b), his 20-year federal sentence should be adjusted to give him credit for time served on that state sentence.

At the time of sentencing, Susinka was serving an undischarged state sentence for delivery of a controlled substance in Kane County, Illinois. *See* Def.'s Mtn., at 2 (Dckt. No. 2040); PSR at 160 (Dckt. No. 1317). He asked that any federal sentence run concurrently with that state sentence under sections 5G1.3(b) or 5G1.3(c) of the Guidelines. *See* Sent'g Tr., at 17:16-23 (Dckt. No. 1425). The government, in turn, argued that any federal sentence should run consecutively to the state sentence pursuant to § 5G1.3(a).

At sentencing, Judge Castillo ordered the federal sentence to run concurrently with the remaining time on Susinka's state sentence. *Id.* at 58:7-10 ("Where I will use my discretion to your benefit is I will make this sentence concurrent with the state sentence, which is to your great benefit, which is something the government doesn't want me to do."); *see also* Judgment, at 1 (Dckt. No. 1278).

But on April 10, 2009, several months after receiving his federal sentence, the Illinois Department of Corrections retroactively recalculated Susinka's release date as October 5, 2007. *See* Def.'s Mtn., at 3 (Dckt. No. 2040). The result was that the retroactive discharge on his state sentence predated the imposition of his federal sentence on January 20, 2009. *See* Judgment (Dckt. No. 1278).

The federal Bureau of Prisons therefore concluded that there was no state sentence to run concurrently with Susinka's federal sentence, so he received no overlapping credit. *Id.* His state and federal sentences effectively became consecutive.

Susinka asks this Court for compassionate release in light of the retroactive recalculation of his discharge date. He is now serving what he views as two consecutive sentences. *Id.* at 6. And he argues that he is "being unfairly double punished for all relevant conduct as the state and federal sentences are stacked, amounting to a 29-year sentence." *Id.* at 4.

The Court concludes that the retroactive change to Susinka's state sentence does not warrant compassionate release. The Illinois Department of Corrections's decision to recalculate Susinka's state sentence is not extraordinary or compelling.

Susinka has beat the double-punishment drum before. On direct appeal, Susinka contested Judge Castillo's failure to give him credit for the 81 months that he had already served between his arrest and incarceration based on the state charges. *See Benabe*, 436 F. App'x at 661. He believed a truly concurrent sentence required Judge Castillo to give him credit for the 81 months he had already served in state custody, meaning that his aggregate sentence would be the length of his federal sentence – 20 years.

The Seventh Circuit rejected that argument, finding that Judge Castillo intended to impose a concurrent sentence only to the extent that Susinka had time remaining on his state

7

sentence. "Susinka received both federal and state credit for time served after the federal sentence was imposed, but no more." *Id.*

In other words, the district court had ordered his sentence to run concurrently with the *remainder* of any undischarged term of imprisonment on his state sentence. That is, he received credit for anything that was *left* on the state sentence, and as it turned out, *nothing* was left. So Susinka's federal sentence was 20 years, beginning on the date of his sentencing.

When Susinka raised this argument again on post-conviction review, the Seventh Circuit came to the same conclusion. *See Susinka v. Copenhaver*, 538 F. App'x 724, 725 (7th Cir. 2013) ("Susinka's challenge to the district court's denial of his § 2241 petition rests on the false premise that the sentencing judge, in ordering concurrent sentences, meant for him to be credited with all time served since 2002. We already have explained to Susinka that his understanding of the judge's sentencing intent is wrong.").

Susinka's motion for compassionate release is now his fourth request for a court to give him credit for time served on his state sentence. This Court agrees with the Court of Appeals: Judge Castillo imposed a 20-year sentence, to run concurrently with any remainder of the state-imposed term of imprisonment, to the extent there was any. Judge Castillo did not credit Susinka with the time he had served since 2002 on his state sentence, and did not intend to adjust his sentence to give him credit for this time.

In other words, Judge Castillo imposed a 20-year sentence to begin on the date of sentencing. The state of Illinois's recalculation of his state sentence does not change that fact, and this Court will not second-guess the district court's judgment on that basis. The change to

8

Susinka's state sentence does not constitute an extraordinary or compelling reason to order his release.[2]

Next, Susinka points to a change to the Sentencing Guidelines, arguing that he would receive a lower sentence under current law. *See* Def.'s Mtn., at 2 (Dckt. No. 2040). Specifically, he cites an intervening amendment to section 5G1.3(b), which deals with when a district court must impose concurrent sentences, and adjust the sentence for any period of imprisonment already served, when the inmate is serving "a term of imprisonment result[ing] from another offense that is relevant conduct to the instant offense of conviction." *See* U.S.S.G. § 5G1.3(b).

Before 2014, section 5G1.3(b) imposed two requirements before triggering the mandatory sentence adjustment and imposition of concurrent sentences. A defendant needed to show (1) that the prior offense was relevant conduct to the instant offense within the meaning of section 1B1.3, and (2) that the prior offense "was the basis for an increase in the base offense level for the instant offense" under Chapters Two and Three of the Guidelines. *See* U.S.S.G. § 5G1.3(b) (2009).

---

[2] In his supplemental filing, Susinka takes aim at another issue that he raised on appeal. Susinka takes issue with the sentencing court's finding that he was involved in the murder of Robert Perez, despite the jury's special verdict determination that the murder was not proved as to him. *See* Def.'s Supplement, at 2–3 (Dckt. No. 2029). The Seventh Circuit rejected this argument on appeal, and so does this Court in considering his motion for compassionate release. "*Apprendi* does not apply when the defendant's sentence does not exceed a prescribed statutory maximum for findings made by a jury. Susinka's sentence did not exceed the twenty years prescribed for RICO conspiracy without further aggravation. There was no *Apprendi* problem here." *See Benabe*, 436 F. App'x at 660 (citations omitted). Susinka's argument fails for several other reasons, too. First, the cases Susinka cites – *Alleyne v. United States*, 570 U.S. 99 (2013), and *Hurst v. Florida*, 577 U.S. 92 (2016) – do not apply retroactively. *See Crayton v. United States*, 799 F.3d 623, 624 (7th Cir. 2015) (*Alleyne*); *McKinney v. Arizona*, 140 S. Ct. 702, 708 (2020) (*Hurst*). Non-retroactive sentencing changes may not by themselves establish an extraordinary and compelling reason for release under § 3582(c)(1)(A)(i). *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021). Second, and more generally, the Seventh Circuit has regularly held "that legal contests to the validity of a sentence must be resolved by direct appeal or motion under § 2255, not by seeking compassionate release under § 3582." *See United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023).

In 2014, the Sentencing Commission amended section 5G1.3(b) to remove the second requirement. A defendant no longer had to show that the conduct underlying the undischarged sentence was the basis for an increase in the base offense level of the instant offense. *See* U.S.S.G. § 5G1.3(b), amend. 787 (effective Nov. 1, 2014) (striking "and that was the basis for an increase in the offense level under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)").

Susinka now argues that, in light of Amendment 787, his sentence would be lower under current law because the district court would have been required (to the extent the advisory guidelines could "require" something) to adjust his sentence for his period of incarceration already served on his state offense.

That argument is unavailing. Susinka's argument is about a change that is not retroactive, so it is not extraordinary or compelling. Things change. That's life. That's not extraordinary or compelling.

The Seventh Circuit has held that a non-retroactive change in sentencing laws cannot constitute an extraordinary and compelling reason for compassionate release. *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021). In fact, when deciding whether an extraordinary and compelling reason exists to justify compassionate release, "judges *must not* rely on non-retroactive statutory changes." *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (emphasis added). "There is nothing 'extraordinary' about new statutes . . . these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255." *Id.*; *see also United States v. Brock*, 39 F.4th 462, 466 (7th Cir. 2022) ("Judicial decisions, whether characterized as announcing new law or otherwise, cannot alone amount to an extraordinary and compelling circumstance

10

allowing for a sentence reduction. To permit otherwise would allow § 3582(c)(1)(A) to serve as an alternative to a direct appeal or a properly filed post-conviction motion under 28 U.S.C. § 2255.").

Sometimes the Sentencing Commission makes changes, and gives them retroactive effect for the purpose of relief under 18 U.S.C. § 3582(c)(2). *See Dillon v. United States*, 560 U.S. 817, 821 (2010) (noting that Congress has charged the Sentencing Commission "with determining whether and to what extent an amendment will be retroactive"). That provision allows a sentencing court to reduce a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(2).

The applicable policy statement instructs that a reduction in the term of a defendant's sentence is "not consistent with this policy statement" and, therefore not authorized under § 3582(c)(2), if "[n]one of the amendments listed in subsection (d) is applicable to the defendant." *See* U.S.S.G. 1B1.10(a)(2); *see also Dillon*, 560 U.S. at 821 (2010) (stating that section 1B1.10 is the applicable policy statement). So, in order for a defendant to be eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) based on an amendment that would reduce his Guidelines range, the amendment must be listed in section 1B1.10(d).

But, as Susinka concedes, Amendment 787 is *not* listed in section 1B1.10(d) of the Sentencing Guidelines and has *not* been made retroactive by the Sentencing Commission. *See United States v. Smith*, 2017 WL 118409, at *2 (N.D. Ill. 2017) (holding that the defendant could not "rely on Amendment 787 to navigate around the finality of § 3582(c) because that amendment was not deemed retroactively applicable by the Commission – the amendment is not

11

listed in § 1B1.10"); *see also* Def.'s Mtn., at 6 (Dckt. No. 2040) ("Though the Commission has performed part of its duty in passing Amendment 787, its obligation is lacking in not listing Amendment 787 for retroactive application.").

Again, the Seventh Circuit has held that "[t]here's nothing 'extraordinary'" about non-retroactive statutory changes. *See King*, 40 F.4th at 595. The same conclusion applies to a post-sentencing change to the Sentencing Guidelines. While a defendant may seek a sentence reduction based on a retroactive Sentencing Guidelines amendment pursuant to section 3582(c)(2), courts have held that non-retroactive Guidelines changes are not extraordinary and compelling for purposes of relief under section 3582(c)(1). *See United States v. Hamilton*, 2022 WL 16845149, at *3 (11th Cir. 2022) (finding that a post-sentencing Guidelines amendment did not qualify as "extraordinary and compelling" within the meaning of § 3582(c)(1)(A)(i))*; see also United States v. Holmes*, 2020 WL 7452212, at *3 (S.D. Ill. 2020) (finding a non-retroactive Guidelines amendment did not on its own constitute an extraordinary and compelling circumstance, "particularly considering that Congress did not intend for the change to be retroactive"). Susinka may not use compassionate release as an end-run around section 3582(c)(2) and the Commission's decision to make certain guideline amendments non-retroactive.

Finally, Susinka raises several other "extraordinary factors" that he believes warrant relief. None of these additional reasons, alone or in combination, rise to the level of an extraordinary and compelling reason for release.

First, Susinka points to his troubled upbringing and youth at the time of his crime. *See* Def.'s Mtn., at 9–11 (Dckt. No. 2040). Susinka was 18 years old when he was first taken into custody. *Id.* at 9. He informs the Court that he grew up "on a fault line of criminal activity" in

12

which "[d]rugs, prostitution, and gangs dominated the area." *Id.* at 11. "As a youth," Susinka says, he "had no control over where he was raised, lacked significant positive guidance, and [a] strong male role model." *Id.* He blames his age, this hostile environment, and "[a]n underdeveloped sense of self" as the causes of his decision "to embrace his previous criminal environment as the only norm available." *Id.*

The Court does not view Susinka's young age at the time of his crimes and his unstable childhood environment as bases for the extraordinary relief he seeks. "[N]either of these facts are extraordinary – unfortunately, many defendants are young when they commit their crimes, and many had traumatic childhoods." *United States v. Bigsby*, 2022 WL 1782274, at *3 (S.D. Ind. 2022). Young people commit their share of crime, and then some. Their age is not extraordinary and compelling – if anything, it is all too common.

What's more, both factors were known to the sentencing judge in 2009. Indeed, Judge Castillo heard Susinka describe his experience growing up in a "bad neighborhood," including getting shot at age 17. *See* Sent'g Tr., at 42:9 – 43:14 (Dckt. No. 1425). Judge Castillo considered that background, and fully took it into account. Even so, Judge Castillo held Susinka responsible for Susinka's crime: "I think you need to, in the first instance, look in the mirror, accept responsibility for all that you've done, which I'm not sure that you have. You're so clever that I think you fool yourself sometimes into blaming your environment." *Id.* at 56:16-20.

Because the sentencing judge was aware of those facts, they provide no reason to reduce his sentence today. *See United States v. Rimpson*, 2021 WL 6098440, at *1 (7th Cir. 2021) (concluding that because the district court knew of the defendants' young age at the time of the offenses, "that fact provides no reason – let alone an extraordinary and compelling one – to reduce those sentences now"); *United States v. Wrice*, 2021 WL 7209619, at *1 (7th Cir. 2021)

13

("[F]acts known at the original sentencing cannot justify a later reduction."); *see also United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021) (holding that facts known at the time of sentencing – which typically fall under the analysis of the section 3553(a) factors – cannot constitute "extraordinary and compelling" reasons for compassionate release).

What's more, it is not clear to this Court that time and age have led Susinka to heed the district court's advice and accept responsibility for the crimes of his youth. The closest Susinka comes in the present motion to ownership of his actions is his acknowledgement that "it is unfortunate [that] things in this case occurred." *See* Def.'s Mtn., at 21 (Dckt. No. 2040). Yes, violent gang activity is, well, "unfortunate."

But even then, Susinka still deflects responsibility and casts himself as the victim of his environment. He informs the Court that "[h]e has been shot at twice and subject to beatings in the street as a youth – a juvenile. After these occurrences, there would be no question why a kid, a boy, growing up in such a hostile environment would be susceptible to these pressures." *Id.*

Susinka continues to blame other people for his own failures. To be sure, the Court has no doubt that Suisnka's troubled childhood was a powerful ingredient in shaping his criminal habit as a young adult. It certainly did not set him up for success.

But his failure, more than a decade later, to recognize his own agency in committing the crime gives this Court more than a little pause. Youth was not the only thing to blame in this case, and this Court concludes that it is not an extraordinary and compelling reason for his release.

Second, Susinka points to the time he has already served. *See* Def.'s Mtn., at 12 (Dckt. No. 2040). Having been in custody – first state, then federal – continuously since 2002, Susinka has spent most of his life in prison. *Id.* His late teens, all of his twenties, and the majority of his

14

thirties have passed behind bars, and he points out that he has been incarcerated "longest of all defendants in this case." *Id.* Susinka argues that he has already served a "very substantial period of imprisonment," which he sees as an extraordinary and compelling reason justifying his release. *Id.*

The fact that Susinka has been in prison much of his life does not justify getting out early. Susinka's federal sentence, 75% of which he has served, is 20 years in prison. Although Susinka has spent the last 20 years in prison, a motion for a sentence reduction based on compassionate release is not a parole proceeding. The length of his sentence, in and of itself, is not an extraordinary and compelling reason for release. If anything, the length of the sentence reflects the seriousness of the conduct. And as this Court has already discussed, that conduct was deadly serious.

Third, in a separate section of his motion, Susinka cites "[t]he Coronavirus" as a reason for his release. He does not point to the danger of the disease, or his susceptibility to it. Instead, Susinka asserts that the BOP's health measures to combat the virus – such as the temporary elimination of outside cell programming – have hindered his ability to earn time credits under the First Step Act and have resulted in the delay of his transfer to a lower security prison. *See* Def.'s Mtn., at 17–18 (Dckt. No. 2040).

The existence of COVID-19 vaccines poses a significant barrier to a claim of compassionate release based on the pandemic. As the Seventh Circuit has made clear, "vaccines provide a much better defense against infection than any judicial order could do." *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 802–03 (7th Cir. 2021)).

15

The COVID-19 pandemic set all of society back, not just prisoners. "COVID-19 was a scourge in prisons, where social distancing is impossible." *Id.* There is nothing in the record suggesting that Susinka is uniquely vulnerable, or anything along those lines. The existence of a pandemic, without more, is not extraordinary and compelling reasons justifying his release.

Fourth, Susinka argues in his supplemental filing that his sentence is disproportionate when compared to the sentences of his codefendants. *See* Def.'s Supplement, at 4 (Dckt. No. 2029). He points out that Harold Crowder, like himself, was found not criminally responsible for the murder of Robert Perez, and yet received only 177 months in prison. *Id.*

That argument gets Susinka nowhere, even if (for the sake of argument) he did get the short end of the sentencing stick. "[D]isparate sentences for different members of the same criminal organization are not the kind of 'extraordinary and compelling reason' that justifies compassionate release." *See United States v. Doyle*, 2023 WL 2333248, at *3 n.5 (N.D. Ill. 2023) (citing *United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023)).

In reality, Susinka received one of the *lightest* sentences. Many of the other Defendants received life sentences for their roles in the Insane Deuces gang. Unlike those Defendants, Susinka will walk out of prison one day.

### B. Section 3553(a) Factors.

Because Susinka has not offered an extraordinary and compelling reason for his release, the Court need not conduct an analysis of the section 3553(a) factors. *See Ugbah*, 4 F.4th at 597; *Thacker*, 4 F.4th at 576. But in any event, the 3553(a) factors weigh heavily against his release.

The statutory factors include the "nature and circumstances" of the offense and Susinka's "history and characteristics." *See generally* 18 U.S.C. § 3553(a). In addition, the Court considers the need for the sentence to reflect the seriousness of the offense, promote respect for

16

the law, and provide just punishment. *Id.* The Court also takes into account the need for deterrence, the need to protect the public, and the need to provide appropriate care for the defendant. *Id.* Other factors weigh in the balance, too, such as the release plan and the amount of time remaining on his sentence.

Susinka has some characteristics that could support release, some of which this Court has already discussed. He spent his youth in a turbulent, crime-ridden environment, which no doubt set the stage for his subsequent criminal activity. *See* Def.'s Mtn., at 9–11 (Dckt. No. 2040). Additionally, Susinka's mother – the lone breadwinner in the household – is ailing. Susinka's return could offer stability to his immediate family, which includes his out-of-work father, his sister, two nieces, and one nephew. *Id.* at 17.

Susinka has also completed meaningful rehabilitation efforts that would ease his transition upon release. Specifically, he has honed his skills as both a barber and a paralegal. *Id.* at 16. "Cutting hair" is Susinka's "day-to-day positive" and "keeps him busy." *Id.* He states his intent to "immediately enroll in cosmetology school upon his eventual release." *Id.* at 18. Barbers, he correctly observes, are employable everywhere. "Everybody grows hair." *Id.* at 16.

These positive factors weigh in Susinka's favor, and the Court considers them accordingly. The Court understands the negative and often insurmountable influence of a violent upbringing, and it commends Susinka's commitment to a craft that will serve him well upon release. Even so, these mitigating factors do not come close to outweighing other factors that strongly weigh against compassionate release.

The nature and circumstances of Susinka's gang related activity are unquestionably serious. It bears repeating that the Judge Castillo had "no doubt" that Susinka was involved as the driver in the fatal shooting of Perez. *See* Sent'g Tr., at 56:7-15 (Dckt. No. 1425). Judge

17

Castillo further concluded that Susinka "certainly put other people in a position to kill other individuals." *Id.* at 57:5-7. Susinka's mitigating characteristics and efforts at rehabilitation in prison cannot overcome his active role in a street gang that inflicted violence and wreaked havoc in his community. *See* 18 U.S.C. § 3553(a)(1). As Judge Castillo aptly put it, a 20-year sentence is "the only fair sentence that will not deprecate the fact that certain individuals are in wheelchairs, shot up or dead as a result of [Susinka's] gang activity." *See* Sent'g Tr., at 58:3-6.

Susinka's 20-year statutory maximum prison sentence – well within his Guideline range of life in prison – is therefore necessary to reflect the seriousness of Susinka's offense, promote respect for the law, and deter similar conduct in the future. *See* 18 U.S.C. § 3553(a)(2)(A). At sentencing, Judge Castillo remarked that "[t]here's no way that [Susinka] could be part of the Insane Deuces . . . and not get a 20-year sentence because the sentencing guideline range is life." *See* Sent'g Tr., at 57:23 – 58:1 (Dckt. No. 1425). Granting Susinka early release does not comport with any sense of justice.

In short, this Court agrees with the sentencing court in his conclusion that the appropriate and necessary sentence for Susinka is 20 years in prison.

## Conclusion

For the foregoing reasons, Susinka's motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) are denied.

Date: March 8, 2023

_____
Steven C. Seeger
United States District Judge